# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| **RUBBERMAID INCORPORATED,** | ) | Case No. 09-1395 |
| | ) | |
| **Plaintiff**, | ) | Hon. Michael M. Mihm |
| | ) | |
| vs. | ) | Magistrate Judge John A. Gorman |
| | ) | |
| **ROBERT BOSCH TOOL** | ) | **DEFENDANTS BARRY L. MACLEAN'S** |
| **CORPORATION, et al.** | ) | **AND J. FRED RISK'S MEMORANDUM** |
| | ) | **IN SUPPORT OF THEIR MOTION TO** |
| **Defendants.** | ) | **DISMISS PLAINTIFF'S AMENDED** |
| | ) | **COMPLAINT** |

## INTRODUCTION

As with its original complaint, Plaintiff's Amended Complaint fails to plead actionable claims against Barry MacLean and Fred Risk (the "Individual Defendants"). Plaintiff, a judgment creditor of LR Nelson Corporation ("LRN"), brought its initial complaint in November 2009 seeking to claw back payments LRN made to the Individual Defendants. That complaint, however, failed to state a claim under the Uniform Fraudulent Transfer Act ("UFTA"). As its own allegations made clear, LRN made these payments to satisfy loans that the Individual Defendants made to LRN in 2007 – well before Plaintiff became a judgment creditor. And when those loans were made, LRN granted perfected security interests to the Individual Defendants, making them secured creditors of the company with valid liens. As the UFTA bars plaintiffs from clawing back payments made to secured creditors, the Individual Defendants filed a motion to dismiss the original complaint.

Plaintiff never disputed the deficiencies raised in that motion. Instead, it filed an Amended Complaint with newly concocted — but just as defective — allegations. Specifically, Plaintiff now alleges (in conclusory fashion) that the liens themselves should be voided as fraudulent transfers. However, the UFTA does not authorize valid liens to be voided when the liens

1

were granted for reasonably equivalent value. And even if it did, Plaintiff's Amended Complaint wholly fails to allege those liens were fraudulently granted with the requisite specificity under Rule 9(b) and the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Plaintiff's other new allegation in its Amended Complaint — that the Individual Defendants somehow released their liens — also fails to save its UFTA claims. While the Individual Defendants released certain lien rights on certain assets that LRN sold to Defendant Bosch Tool Corporation, the plain terms of those *partial* releases (as alleged by Plaintiff) make clear that the Individual Defendants maintained liens on any proceeds from that sale or assets that stayed with LRN. In the end, all of the payments made to the Individual Defendants were encumbered by valid liens, and thus, Plaintiff's claims under the UFTA (Counts I-III) should be dismissed with prejudice.

Plaintiff's other claims fare no better. Its equitable claims in Counts IV and V do not sound in this Court. Only a federal bankruptcy court has jurisdiction to hear those claims. Count IX is wholly void of any facts to state a veil piercing claim against the Individual Defendants. And its remaining claims either constitute "remedies" rather than causes of actions or lack a valid, underlying tort. Hence, Plaintiff's Amended Complaint lacks any actionable claims against the Individual Defendants, and its claims against them should be dismissed.

### PLAINTIFF'S FACTUAL ALLEGATIONS

A.   **Plaintiff's Dispute With LRN**

This action arises from Plaintiff's attempts to collect on a judgment against LRN. On March 12, 2008, Plaintiff brought suit against LRN in the Western District of North Carolina, claiming damages under a license agreement that LRN allegedly breached. *See* Am. Compl. ¶88. Over a year later, on May 18, 2009, Plaintiff secured a $2.75 million judgment against LRN after the parties entered into a consent judgment to end the litigation. *See id.* ¶95.

Prior to the consent judgment, in September 2008, LRN sold substantially all of its assets to Defendant Robert Bosch Tool Corporation ("Bosch") and Signature Controls Systems, Inc. ("Signature Controls").  *See id.* ¶¶111-114.  In light of those transactions, Plaintiff claims that LRN is no longer solvent to satisfy the consent judgment.  *See id.* ¶98.  To date, LRN has not filed for bankruptcy.

**B.     Plaintiff's First Complaint**

Unable to collect on its judgment from LRN, Plaintiff filed on November 29, 2009, its initial complaint against new Defendants.  In that complaint, Plaintiff (as it does now) sought to claw back certain payments that LRN made to the Individual Defendants in 2008 and 2009.  As alleged in the original complaint, each of these payments were made to repay secured loans that the Individual Defendants provided to LRN in 2007.

As these payments were subject to valid liens (and therefore, not subject to the fraudulent transfer laws), the Individual Defendants filed a motion to dismiss on February 8, 2010.  Plaintiff never responded to this motion.  Instead, Plaintiff filed an Amended Complaint on March 3, 2010 that attempted to correct these deficiencies.

**C.     Plaintiff's Amended Complaint Fails To Salvage Its Claims**

It failed.  Plaintiff's Amended Complaint is equally defective as its original complaint.  Like the original complaint, the Amended Complaint alleges that the Individual Defendants were recipients of "fraudulent transfers" when LRN repaid certain loans that the Individual Defendants made to LRN.  Although the loans were made prior to Plaintiff's suit against LRN in North Carolina as well as the sale of LRN's assets to Bosch and Signature Controls, Plaintiff claims that LRN's subsequent repayment of these loans constituted fraudulent transfers.  *See* Am. Compl. at Counts I-III.  Specifically, Plaintiff alleges that each of the Individual Defendants improperly received over $1 million in cash proceeds from the Bosch transaction, and

3

additional payments from LRN and/or Bosch after the transaction. *See id.* ¶¶ 146, 150, 164, 166, 172. Additionally, in an attempt to cure the deficiencies in its original complaint, the Amended Complaint now alleges (with no factual support) that the liens provided to the Individual Defendants should be voided as fraudulent transfers. *See id.* ¶¶ 71, 128. Alternatively, Plaintiff alleges that the Individual Defendants released their liens when LRN sold certain of its assets to Bosch in 2008. *See id.* ¶¶ 132-36.

Based on these new allegations, Plaintiff continues to assert that each of the loan repayments made to the Individual Defendants should be clawed back as fraudulent transfers and has alleged the following eight counts against the Individual Defendants: (Count I) Fraudulent Transfers under 740 ILCS 160/6(b); (Count II) Fraudulent Transfer under 740 ILCS 160/5(a)(1); (Count III) Fraudulent Transfers under 740 ILCS 160/5(a)(2); (Count IV) Insider Debt Recharacterization; (Count V) Equitable Subordination; (Count VI) Equitable Trust; (Count VII) Civil Conspiracy to Commit Fraud; (Count VIII) Aiding and Abetting; and (Count IX) for Alter Ego/Veil Piercing.[1]

**D.    The Payments Received by the Individual Defendants Were Made Pursuant to Loan Agreements**

As referenced in the Amended Complaint, each of Plaintiff's counts are based on certain loan agreements and security agreements that were entered into between the Individual Defendants and LRN in 2007. *See id.* ¶45 (LRN "On or about June 5, 2007, LRN . . . entered into a Subordinated Promissory Note obligating LRN to pay Risk $2 million…."); ¶46 (LRN "entered into a Subordinated Promissory Note obligating LRN to pay MacLean $2 million…."); ¶49 ("On or about June 5, 2007, LRN . . . entered into a Security Agreement granting a lien on certain assets to secure" the loans made by Risk and MacLean). This Court can consider these loans and security

---

[1]    In addition to bringing claims under the Illinois Uniform Fraudulent Transfer Act in Counts I-III, Plaintiff has also cited the UFTA statutes under Delaware and North Carolina law.

agreements in connection with the present motion. *See, e.g.*, *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (it is "well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.'") (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Specifically, as referenced in the Amended Complaint, each of the payments made to the Individual Defendants were made pursuant to promissory notes that they entered into with LRN in 2007. *See* Am. Compl. ¶283. On June 5, 2007 — long before Plaintiff ever asserted a claim against LRN in North Carolina — the Individual Defendants each loaned $2 million to LRN pursuant to two separate promissory notes. *See id.* ¶¶45-48; Subordinated Promissory Note between Barry L. MacLean and LR Nelson, June 5, 2007 (the "MacLean Note") (attached as **Exhibit A**); Subordinated Promissory Note between J. Fred Risk and LR Nelson, June 5, 2007 (the "Risk Note") (attached as **Exhibit B**).

On that same date, in consideration for entering into the MacLean and Risk Notes, LRN granted security interests to both MacLean and Risk pursuant to two separate security agreements. *See* Am. Compl. ¶ 49*;* Security Agreement between LRN and MacLean, June 5, 2007 (the "MacLean Security Agreement") (attached as **Exhibit C**); Security Agreement between LRN and Risk, June 5, 2007 ("Risk Security Agreement") (attached as **Exhibit D**); *See* Compl. ¶142. Under each of the Security Agreements, LRN granted security interests in all of LRN's property (both presently owned and subsequently acquired property), consisting of its accounts receivables, contract rights, inventory, goods, materials, and all tangible personal property that LRN owned, including all proceeds from that property. *See* Ex. C at §1; Ex. D at §1. Specifically, LRN granted security interests in all of LRN's property, consisting of:

> a. All accounts receivable, contract rights, chattel paper, documents, instruments, general intangibles, . . . and other forms of obligation and other rights to

5

>  the payment of money, now owned or which may hereafter arise in favor of [LRN] . . .;
>
>  b.   All of [LRN's] inventory, including all goods, merchandise, materials, raw materials, work in process, finished goods and other tangible personal property now owned or hereafter acquired and held for sale or lease or furnished or to be furnished under contracts of services or used or consumed in [LRN's] business . . . ;
>
>  c.   All proceeds, including insurance proceeds, and products of (a) and (b) above.

Ex. C at §1; Ex. D at §1.

These security interests constituted perfected liens. On June 8, 2007, in conjunction with entering into the Security Agreements, LRN prepared and filed UCC Financing Statements with the Delaware Department of State. *See* MacLean UCC Financing Statement, June 8, 2007 (attached as **Exhibit E**); Risk UCC Financing Statement, June 8, 2007 (attached as **Exhibit F**). As these liens were perfected, the Individual Defendants became secured creditors of LRN.

### E.   LRN Sells Certain Assets To Bosch

As alleged in the Amended Complaint, on September 18, 2008, LRN sold certain of its assets to Bosch pursuant to a Global Purchase Agreement, including certain assets of LRN's Consumer Products division, real estate, and other LRN subsidiaries (the "Bosch Transaction"). *See* Am. Compl. ¶ 111. The Global Purchase Agreement collectively defined each of the assets sold to Bosch as the "Purchased Assets." *Id.* Concurrent with the Bosch Transaction, the Individual Defendants released only certain of their security interests in the Purchased Assets. *See* Am. Compl. ¶¶ 124, 135, 136; MacLean Amended UCC Financing Statement, Sept. 18, 2008 (attached as **Exhibit G**); Risk Amended UCC Financing Statement, Sept. 18, 2008 (attached as **Exhibit H**). While these releases extended to those Purchased Assets sold to Bosch, the plain terms of the Amended UCC Financing Statements filed by the Individual Defendants make clear that they *never* released their security interests in any of LRN's other assets that stayed with the company, or any

6

proceeds that LRN would receive in consideration for the Purchased Assets. *See* Ex. G (release of security interests limited to the "Purchased Assets"); Ex. H (same).

Thus, any proceeds that LRN received from the Bosch Transaction continued to be subject to the Individual Defendants' security interests. Hence, each and every payment that Plaintiff seeks to claw back in this case under the UFTA were repayments of loans made by secured creditors with valid liens.

## ARGUMENT

### I. Applicable Legal Standard

This Court should dismiss all of Plaintiff's claims against the Individual Defendants pursuant to Rule 12(b)(6). Under that rule, a cause of action must be dismissed if the plaintiff fails to "provide sufficient facts to 'state a claim to relief that is plausible on its face.'" *Waggener v. Cullinan*, No. 08-3166, 2009 U.S. Dist. LEXIS 112536, at *5-6 (C.D. Ill. Dec. 3, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a court considers the complaint's allegations, it "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Rather, to survive a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the plaintiff's cause of action. *See Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Here, none of the facts alleged in Plaintiff's Amended Complaint state a claim against the Individual Defendants.

### II. Counts I – III Fail to State Valid Claims Under the UFTA

#### A. Plaintiff's Fraudulent Transfer Claims Fail Because All Payments Made To The Individual Defendants Were Encumbered By Valid Liens

Plaintiff's Amended Complaint suffers from the same fatal facts that plagued its prior complaint — the Individual Defendants were paid as secured creditors with funds encumbered

7

by valid liens. Under the UFTA, the transfer of property to a secured creditor that is encumbered by a lien cannot form the basis of a fraudulent transfer claim. *See, e.g.*, *Steinberg v. Young*, 641 F. Supp. 2d 637, 642 (E.D. Mich. 2009) (holding that assets plaintiff sought to recover under the UFTA "cannot include 'property to the extent that it is encumbered by a valid lien.'"). The UFTA affords no remedy for unsecured creditors that have brought claims against secured creditors. *See* Uniform Fraudulent Transfer Act § 1 comments on definitions section (Nat'l Conf. of Comm. 1984) ("The laws protecting valid liens against impairment by levying creditors . . . are limitations on the rights and remedies of unsecured creditors, and it is therefore appropriate to exclude property interests that are beyond the reach of unsecured creditors" under the UFTA).

Accordingly, courts uniformly hold that the transfer of property encumbered by a security interest cannot form the basis of a UFTA claim. *See, e.g., In re Fleming Packaging Corp.*, No. 03-82408, Adv. No. 05-8124, 2007 Bankr. LEXIS 1047, at *25-26 (C.D. Ill. March 30, 2007) (finding that "no claim under the UFTA is viable" if property transferred was encumbered by a lien); *Nova Chems., Inc. v. Frawley*, No. 02 C 3661, 2003 U.S. Dist. LEXIS 18421, at *16 (N.D. Ill. Oct. 20, 2003) ("a perfected security interest would be a valid lien excluded under the UFTA."); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 262 (1st Cir. 1997) (dismissing UFTA claims because the defendant "unquestionably held a valid security interest in [the debtor's] assets"); *Permasteelisa CS Corp. v. The Airolite Co.*, Case No. 2:06-cv-569, 2007 U.S. Dist. LEXIS 95860, at *18 (S.D. Ohio Dec. 31, 2007) (creditor's recovery under the UFTA must be limited to those assets that were not encumbered by valid liens); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 837-39 (N.D. Iowa 2004) (finding no fraudulent transfer under the UFTA because the defendants had perfected security interests on all of the debtor's property).

As in those cases, Plaintiff's fraudulent transfer claims fail to state a claim under the UFTA. Each of Plaintiff's fraudulent transfer claims are based on payments that LRN made to the

8

Individual Defendants in connection with the repayment of the MacLean and Risk Notes. *See* Exs. A, B. These Notes were secured by substantially all of LRN's assets, including all of its accounts receivables, contract rights, inventory, goods, materials, and all tangible personal property that LRN owned, including all proceeds LRN received from the sale of that property. *See* Ex. C at §1; Ex. D at §1. And when LRN sold its assets to Bosch, the Individual Defendants maintained a lien on all of LRN's property, including the "proceeds" that LRN received from that sale. *Id.* Accordingly, all payments made to the Individual Defendants were encumbered by valid liens, and each of Plaintiff's UFTA claims (Counts I-III) in its Amended Complaint should be dismissed.

        **B.**    **The Security Interests Granted To The Individual Defendants Were Valid Liens**

In a further attempt to stave off dismissal, Plaintiff's Amended Complaint now alleges (with no factual support) that the liens granted to the Individual Defendants in 2007 constituted "avoidable fraudulent transfers." Am. Compl. ¶¶ 71, 128. This allegation, however, ignores the plain terms of the UFTA, which provide that a lien is *not* voidable if it was granted in exchange for reasonably equivalent value. *See* 740 ILCS 160/9(d) ("a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to (1) a lien on or a right to retain any interest in the asset transferred…;"); 740 ILCS 160/9(a) (a transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value…."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("[I]f a transfer is made for commensurate consideration – if it is 'fair' in the sense of being one side of an equal exchange – it is not voidable.") (citations omitted). *In re Hennings Feed and Crop Care, Inc.*, 365 B.R. 868, 874 (Bankr. C.D. Ill. 2007) (transfers "are not voidable 'against a person who took in good faith and for a reasonably equivalent value.'").

That is exactly what happened here, and Plaintiff has not (and cannot) plead any facts to the contrary. LRN simultaneously provided these liens to the Individual Defendants in

9

exchange for the MacLean and Risk loans. *See* Ex. C at §1; Ex. D at §1. As with any commercial loan transaction, the Individual Defendants had the right to seek collateral to secure those loans at the time they were made. In fact, it makes little sense for Plaintiff to claim these loan transactions were fraudulent when the loans had the effect of increasing (rather than depleting) resources to LRN (and its creditors). *See, e.g., Frontier Bank v. Brown*, 371 F.3d 1056, 1060 (9th Cir. 2004) (finding that security interests were granted in good faith because "the transactions were simply a means for Debtor to obtain a loan that it would otherwise not be able to receive. The transactions were not intended to, nor did they result in, any net loss to Debtor's estate.").

Not surprisingly, Plaintiff has pled *no* facts to suggest that these liens were provided in bad faith. At best, Plaintiff alleges that the liens were granted "with the intent of hindering, delaying or defrauding LRN's unsecured creditors, including Rubbermaid" (Am. Compl. ¶ 67), but that allegation "is simply a recitation of an element of the claim, which is not sufficient under the standard set forth in *Iqbal*, and certainly not sufficient for the heightened pleading standards of Rule 9(b)." *In re Gluth Bros. Constr., Inc.*, 2009 WL 4037795, at *6 (N.D. Ill. Nov. 19, 2009) (dismissing UFTA claim); *see also In re Liquidation of Medcare HMO, Inc.*, 689 N.E.2d 374, 382, 294 Ill. App. 3d 42, 53 (Ill. App. Ct. 1997) (UFTA allegations that defendant knew company was insolvent, "knew that it was being preferred over other creditors, and knew that its payment would hinder MedCare's payments to its enrollees do not establish fraudulent" transfer claim).

Accordingly, Plaintiff's unsubstantiated claim that the security interests were fraudulent should be rejected as a matter of law and under Rule 9(b), and each of the Amended Complaint's three fraudulent transfer claims (Counts I, II, and III) should be dismissed with prejudice. *Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077, 1080 (N.D. Ill. 2007) (dismissing UFTA claim because "[m]erely reciting the elements of a cause of action is not sufficient."); *Seidel v. Byron*, No. 05 C 6698, 2008 U.S. Dist. LEXIS 76306, at *18 (N.D. Ill. Sept. 26, 2008) (dismissing

UFTA claim because "plaintiff's mere reiteration of the statutory language . . . cannot fulfill the requirements of Rule 9(b)").

### C. Individual Defendants Maintained Liens On LRN's Assets After the Bosch Sale

Plaintiff's final new allegation — that the Individual Defendants somehow released their liens during the asset sale to Bosch — also fails to save its UFTA claims. *See* Am. Compl. ¶¶ 132-36. Although the Individual Defendants provided a partial release on the assets that were transferred to Bosch, those releases never affected any of their liens on the proceeds LRN received from that sale, assets that stayed with LRN, or assets that LRN subsequently received. Specifically, as referenced in the Amended Complaint, the Amended UCC Financing Statements that the Individual Defendants filed in conjunction with the Bosch Transaction make clear that they released only their "security interests in all of the Purchased Assets" that were transferred to Bosch upon the consummation of that transaction. *See* Am. Compl. ¶¶ 135, 136; Ex. G (release of security interests limited to the "Purchased Assets"); Ex. H (same). They never released their liens on the assets that stayed with LRN or any proceeds that LRN received from those transactions. *See id.* Thus, even after the Bosch and Signature Controls transactions, the Individual Defendants continued to hold (and still hold to this day) valid liens over all proceeds LRN received, and were properly repaid a portion of their loans from those proceeds and other amounts LRN subsequently received. As such, Plaintiff's fraudulent transfer claims fail as a matter of law, and Counts I, II, and III of the Amended Complaint should be dismissed with prejudice. *See, e.g., Steinberg*, 641 F. Supp. 2d at 642 (dismissing fraudulent transfer claims because plaintiff could not recover property that was "encumbered by a valid lien.").

### III. Only A Bankruptcy Court Has Jurisdiction Over Plaintiff's Equitable Claims

Plaintiff's Amended Complaint made no effort to salvage the deficiencies that mandate the dismissal of its equitable claims (i.e., Counts IV and V). Equitable claims based on

"recharacterization of debt to equity and equitable subordination are not cognizable causes of action in federal district court." *Arena Dev. Group, LLC v. Naegele Commc'ns, Inc.*, Civ. No. 06-2806, 2008 U.S. Dist. LEXIS 35628, at *9-10 (D. Minn. April 29, 2008). Rather, each of these equitable claims falls within the exclusive province of the bankruptcy courts pursuant to their equitable powers under the Bankruptcy Code. *Id.*; *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d. Cir. 1995) (holding that equitable subordination is "distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others.").

Here, none of Plaintiff's claims are grounded on the Bankruptcy Code. Instead, they are made pursuant to the UFTA. The UFTA "does not bestow a broad power [on a district court] to reorder creditor claims . . . ." *Id.* As such, only bankruptcy courts have the statutory authority or basis to hear claims for recharacterization of debt and equitable subordination. *See Arena Dev. Group*, 2008 U.S. Dist. LEXIS 35628, at *9-10 (dismissing recharacterization of debt claim because court had no "authority to recharacterize debt" outside of bankruptcy court); *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) (equitable subordination claims "can only be decided in a bankruptcy setting."); *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 358 Ill. App. 3d 65, 829 N.E.2d 818, 826 (Ill. App. Ct. 2005) ("equitable subordination is a federal statutory creation available only in bankruptcy proceedings"). Consequently, this Court should dismiss Counts IV and V outright. *See id.* at 826 (dismissing equitable subordination claim because "no such cause of action is recognized in Illinois" outside of bankruptcy court).

## IV. Plaintiff's Equitable Trust Claim Does Not Exist Under Illinois Law

Plaintiff also made no effort to cure the defects in the equitable trust claim alleged in Count VI of its Amended Complaint. Illinois law governs this claim because Plaintiff alleges that all of the purported fraudulent transfers forming the basis of its claim were made and received in Illinois. *See* Am Compl. ¶¶ 146, 150; *see also, Levey v. Hamilton (In re Teknek, LLC)*, 354 B.R.

181, 208 (Bankr. N.D. Ill. 2006) (finding Illinois law applied to a UFTA claim because the debtor was physically located in Illinois, conducted its business from that forum, and the allegedly fraudulent activities occurred there); *In re Sevko, Inc.*, 143 B.R. 167, 174 n.4 (Bankr. N.D. Ill. 1992) (holding that Illinois law should apply to a UFTA claim because "the general tendency in deciding fraudulent conveyance claims is to apply the law of the situs of the property at the time of the transfer."). Illinois law does not recognize a separate cause of action for "equitable trust." *See, e.g.*, *Bill Marek's The Competitive Edge v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 806 N.E.2d 280, 285 ("under Illinois law, a constructive trust described an equitable remedy, rather than a separate cause of action.") (citing *Fujisawa Pharm. Co. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998)). Hence, Count VI of the Amended Complaint should be dismissed with prejudice.

**V.     Plaintiff's Civil Conspiracy And Aiding And Abetting Claims Must Be Dismissed**

Plaintiff's causes of action for civil conspiracy and aiding and abetting also remain defective. Both of these claims are dependent on the existence of another tort — they are not, in and of themselves, separate torts. *See, e.g., Hurst v. Capital Cities Media, Inc.,* 323 Ill. App. 3d 812, 754 N.E.2d 429, 438 (Ill. App. Ct. 2001) ("Conspiracy is not a separate and distinct tort in Illinois."); *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 655 N.E.2d 1162, 1170 (Ill. App. Ct. 1995) (aiding and abetting is not a separate claim without underlying tortious conduct). Thus, claims for civil conspiracy and aiding and abetting must fail if a plaintiff fails to state a claim for a separate, actionable tort. *Id.*

As set forth above, none of the separate fraud claims alleged in Plaintiff's Amended Complaint is actionable against the Individual Defendants. Hence, both of Plaintiff's conspiracy and aiding and abetting claims fail for lack of a predicate tort and should be dismissed. *See Indeck N. Am. Power Fund, L.P. v. Norweb PLC,* 316 Ill. App. 3d 416, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000) ("Where, as here, a plaintiff fails to state an independent cause of action underlying its

13

conspiracy allegations, the claim for a conspiracy also fails"); *Reuben H. Donnelley Corp.*, 655 N.E.2d at 1170 (dismissing aiding and abetting claim because there was no separate tort claim).[2]

## VI. Plaintiff's Veil Piercing Claim Should Be Dismissed Against The Individual Defendants

Finally, this Court should dismiss the Amended Complaint's new, last-ditch veil piercing claim against the Individual Defendants. "Parties seeking to pierce the corporate veil face a daunting hurdle." *Rehabcare Group East, Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 U.S. Dist. LEXIS 82952, at *6 (N.D. Ill. Nov. 8, 2007); *see also*, *Sourceone Global Partners, LLC v. KGK Synergize, Inc.*, No. 08 C 7403, 2009 U.S. Dist. LEXIS 62258, at *8 (N.D. Ill. July 21, 2009) ("Piercing the corporate veil is not favored and, in general, courts are reluctant to do so."). A court will pierce a corporation's veil of limited liability only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist," and when "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985); *Judson Atkinson Candies, Inc. v. Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008) ("a corporation is presumed to be 'separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations.").

The Amended Complaint wholly fails to allege either of these elements against the Individual Defendants. Although the Individual Defendants were outside directors of LRN (not officers or employees), Plaintiff never alleges (nor can it) any facts suggesting that either of them had a unity of interest or control over the day to day operations of LRN. Rather, all of the allegations relating to Count IX are directed to Ransburg – not the Individual Defendants. *See* Am.

---

[2]   Count XII for "Post-Judgment Relief" does not constitute a separate cause of action, and thus, should be dismissed.

Compl. ¶ 425 ("Ransburg has dominated and controlled LRN, and misused the corporate form, such that LRN is now merely his alter ego."); ¶ 428 ("there is now such a unity of interest and ownership that the separate personalities of LRN and Ransburg no longer exist"); ¶ 429 ("Ransburg has used LRN to unjustly enrich himself"); ¶ 435 ("Ransburg now uses LRN as an instrumentality to conduct his own personal business").  And, the sole allegation against the Individual Defendants in Count IX – that they "participated in, benefited from, encouraged, and/or acquiesced in Ransburg's manipulation…" (Am. Compl. ¶437) – is precisely the type of "conclusions that are insufficient to state a claim predicated on a veil piercing theory."  *Marc Maghsoudi Enters., Inc. v. Tufenkian Import/Export Ventures, Inc.*, No. 08 C 441, 2009 U.S. Dist. LEXIS 107266, at *14 (N.D. Ill. Nov. 16, 2009) (dismissing veil piercing count because bare conclusions "are not entitled to the presumption of truth without factual allegations that will nudge 'claims across the line from conceivable to plausible.'").  Thus, there is simply no basis to pierce the veil against the Individual Defendants.  Accordingly, Count IX of the Amended Complaint should be dismissed against the Individual Defendants.

    Respectfully submitted,

    BARRY L. MACLEAN and J. FRED RISK

Dated: April 7, 2010

    By     s/Michael P. Mayer

Dane A. Drobny
Michael P. Mayer
Amanda R. Conley
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago Illinois, 60601
(312) 558-5600
COUNSEL FOR DEFENDANTS
BARRY L. MACLEAN and J. FRED RISK
mmayer@winston.com

**CERTIFICATE OF SERVICE**

I, Michael P. Mayer, attorney for the Defendants Barry L. MacLean and J. Fred Risk, certify that on April 7, 2010 I electronically filed the foregoing with the Clerk of the Central District of Illinois using the CMECF system which will send notification of such filing to the following:

>   Timothy Farrell Sweeney
>   Lynn Rowe Larson
>   Law Office of Timothy Farrell Sweeney
>   Suite 430
>   820 W Superior Avenue
>   Cleveland, OH 44113
>
>   David A. Brown
>   Black Black & Brown
>   115 Washington Square
>   Washington, IL 61571
>
>   Stephen J. O'Neil
>   Dawn L. Johnson
>   Molly K. McGinley
>   K & L Gates LLP
>   70 West Madison Street
>   Suite 3100
>   Chicago, IL 60602
>
>   Robert M. Riffle
>   Elias Meginnes Riffle & Seghetti
>   Suite 1400
>   416 Main Street
>   Peoria, IL 61602

By: ____s/ Michael P. Mayer_____