This instrument and the rights and obligations evidenced hereby are subordinate in the manner and to the extent set forth in that certain Subordination and Intercreditor Agreement (the "Subordination Agreement") dated as of September 29, 2006 among L.R. Nelson Corporation (the "Company"), National City Bank (formerly known as National City Bank of the Midwest) ("National City"), and Wells Fargo Foothill, Inc. ("Agent"), to the indebtedness (including interest) owed by the Company pursuant to (i) that certain Credit Agreement dated as of January 25, 2006 among the Company, and Sunterra, LLC, a Delaware limited liability company, the Agent and the lenders from time to time party thereto, and (ii) that certain Real Property Loan Agreement dated as April 27, 2006 between the Company and National City, and in each case the agreements, instruments and documents executed in connection therewith, as such Credit Agreement and such Loan Agreement and such other agreements, instruments and documents have been and hereafter may be amended, supplemented or otherwise modified from time to time and to indebtedness refinancing any such indebtedness as contemplated by the Subordination Agreement; and each holder of this instrument, by its acceptance hereof, irrevocably agrees to be bound by the provisions of the Subordination Agreement.

## SUBORDINATED PROMISSORY NOTE

September 29, 2006                                                                                              $4,000,000

THIS SUBORDINATED PROMISSORY NOTE is made in Peoria, Illinois as of the date hereof, for Four Million Dollars ($4,000,000), with interest as provided herein.

RECITALS:

A.   This Note is made by L.R. Nelson Corporation, a Delaware corporation ("Borrower"), and is payable to the order of David P. Ransburg ("Lender"). The holder from time to time of this Note is referred to as "Payee."

B.   This Note evidences the obligation of Borrower to pay to Lender the principal amount of Four Million Dollars ($4,000,000), with interest on the balance remaining from time to time unpaid at the "Interest Rate" (as hereinafter defined) on the basis hereinafter set forth. The loan evidenced by this Note is referred to herein as the "Loan."

C.   Payment of this Note is secured by a Security Agreement from Borrower to Lender of even date herewith (the "Security Agreement"). Reference is made to the Security Agreement for a description of the property and the rights of Payee with respect to such security. All of the agreements, conditions, covenants, provisions and stipulations contained in the Security Agreement are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their respective terms.

EXHIBIT A

1. Payment.

   (a)     Borrower hereby promises to pay to the order of Payee the principal sum of Four Million Dollars ($4,000,000), with interest thereon at the Interest Rate as follows:

   - Commencing November 1, 2006, and continuing on the first day of each month thereafter until this Note is repaid in full, a payment of all unpaid interest accrued on the outstanding principal balance of the Loan;

   - All outstanding principal and interest remaining unpaid, and all other sums then due to Payee with respect to the Loan, on December 31, 2006.

   Lender acknowledges that Borrower's obligations to repay this Note are subject to the provisions of the Subordination Agreement (as hereinafter defined).

   (b)     The term "Interest Rate" means a fluctuating rate per annum determined by adding six and one half percent (6.50%) to the LIBOR Rate. For purposes of this Note, "LIBOR Rate" means the rate per annum for deposits in U.S. Dollars in the London Interbank Market for a period equal to 30 days, as announced by Lender from time to time.

   (c)     The term "Maturity Date" shall mean December 31, 2006, subject to the acceleration provisions of this Note.

   (d)     In the event any installment of principal or interest hereunder shall become overdue for a period in excess of ten (10) days, Borrower shall pay to the Payee a "late charge" equal to five percent (5%) of the amount unpaid or $25.00, whichever is greater, up to a maximum amount of $250 per payment.

   (e)     This Note may be prepaid, in whole or in part and from time to time, without premium or penalty, subject to the provisions of the Subordination Agreement. Prepayments shall be in a minimum amount of $50,000 and integral multiples thereof. Any prepayments shall be applied first to any unpaid accrued interest or fees due hereunder and then to principal. Partial prepayments shall be applied against future principal payments in the reverse order of maturity.

   (f)     The obligations of Borrower on this Promissory Note shall be absolute and unconditional in any and all circumstances, and shall not be affected by any circumstances of any character, including, but not limited to any set-off, counterclaim, recoupment, real or personal defense or other right which Borrower may have against the Lender, its successors and assigns, or anyone else for any reason whatsoever.

   (g)     Notwithstanding any provisions of this Note or any instrument securing payment of the indebtedness evidenced by this Note to the contrary, it is the intent of Borrower and Payee that Payee shall never be entitled to receive, collect or apply, as interest on principal of the indebtedness, any amount in excess of the maximum rate of interest permitted to be charged by applicable law; and if under any circumstance whatsoever, fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by applicable law, then the obligation to be fulfilled shall be reduced to the limit of such validity; and in the event Payee ever receives, collects or applies as interest any such excess, such amount which would be excess interest shall

be deemed a permitted partial prepayment of principal and treated hereunder as such; and if the principal of the indebtedness secured hereby is paid in full, any remaining excess funds shall forthwith be paid to Borrower. In determining whether or not interest of any kind payable hereunder, under any specific contingency, exceeds the highest lawful rate, Borrower and Payee shall, to the maximum extent permitted under applicable law, (1) characterize any non-principal payment as an expense, fee or premium rather than as interest and (2) amortize, prorate, allocate and spread to the end that the interest on account of such indebtedness does not exceed the maximum amount permitted by applicable law; provided that if the amount of interest received for the actual period of existence thereof exceeds the maximum lawful rate, Payee shall refund to Borrower the amount of such excess. Payee shall not be subject to any penalties provided by any laws for contracting for, charging or receiving interest in excess of the maximum lawful rate.

(h)     Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note.

(i)      Unless otherwise agreed to, in writing, or otherwise required by applicable law, payments will be applied first to accrued, unpaid interest, then to principal, and any remaining amount to any unpaid collection costs, late charges and other charges; provided, however, upon delinquency or other default, Lender reserves the right to apply payments among principal, interest, late charges, collection costs and other charges at its discretion. All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion.

(j)      This instrument and the rights and obligations evidenced hereby are subordinate in the manner and to the extent set forth in that certain Subordination and Intercreditor Agreement (the "Subordination Agreement") dated on or about the date hereof among L.R. Nelson Corporation (the "Company"), National City Bank (formerly known as National City Bank of the Midwest) ("National City"), and Wells Fargo Foothill, Inc. ("Agent"), to the indebtedness (including interest) owed by the Company pursuant to (i) that certain Credit Agreement dated as of January 25, 2006 among the Company, and Sunterra, LLC, a Delaware limited liability company, the Agent and the lenders from time to time party thereto, and (ii) that certain Real Property Loan Agreement dated as April 27, 2006 between the Company and National City, and in each case the agreements, instruments and documents executed in connection therewith, as such Credit Agreement and such Loan Agreement and such other agreements, instruments and documents have been and hereafter may be amended, supplemented or otherwise modified from time to time and to indebtedness refinancing any such indebtedness as contemplated by the Subordination Agreement; and each holder of this instrument, by its acceptance hereof, irrevocably agrees to be bound by the provisions of the Subordination Agreement.

2.      Default and Remedies.

(a)     In the event (1) default is made in the payment of any part of the principal or interest of this Note within five (5) days after the same become due and payable, (2) default is made in the payment of any other sum due pursuant to the terms of this Note or the Security Agreement within five (5) days after the same becomes due and payable, or (3) if an event of default shall occur under and as defined in the Security Agreement and any applicable grace period has expired (collectively, "Events of Default"), Payee shall have the option, without demand or notice, to declare the unpaid principal of this Note, together with all accrued interest and other sums owing hereunder, at once due and payable, and to exercise any and all other rights and remedies available in the Security Agreement or at law or in equity.

(b)     The remedies of Payee, as provided herein, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Payee, and may be exercised as

often as occasion therefor shall arise. No act of omission or commission of Payee, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by Payee and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

3.   Costs and Attorneys' Fees.

Borrower promises to pay all costs of collection of every kind, including but not limited to all reasonable attorneys' fees, court costs, and expenses of every kind, incurred by Payee in connection with such collection or the protection or enforcement of any or all of the security for this Note, whether or not any lawsuit is filed with respect thereto.

4.   Waiver.

Except as otherwise provided herein, each maker, surety, guarantor and endorser hereon waives grace, notice, notice of intent to accelerate, notice of default, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that his or its liability and the liability of his or its heirs, beneficiaries, successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment. It is specifically agreed by the undersigned that the Payee shall have the right at all times to decline to make any such release or change in any security given to secure the payment hereof and to decline to make any such increase, modification, renewal or extension of the indebtedness or its mode and time of payment. This Note shall constitute a joint and several obligation when signed by more than one party.

5.   Nonpermitted Transfers.

The Security Agreement provide that any sale, transfer or other alienation of the property securing this Note, or any portion thereof or interest therein, other than as expressly permitted therein, constitutes an Event of Default thereunder and permits the holder of this Note to invoke any remedies therein provided.

6.   Notices.

All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given (i) when delivered in person, (ii) when received after deposit in a regularly maintained receptacle of the United States mail as registered or certified mail, postage prepaid, (iii) when received if sent by private courier service, or (iv) on the day on which the party to whom such notice is addressed refuses delivery by mail or by private courier service and (b) addressed as follows:

|  |  |
|---|---|
| To Lender: | David P. Ransburg<br>One Sprinkler Lane<br>Peoria, IL 61615 |
| To Borrower: | L.R. Nelson Corporation<br>One Sprinkler Lane<br>Peoria, IL 61615<br>Attn: Ted J. Lueken |

or to each such party at such other addresses as such party may designate in a written notice to the other parties.

7.  Miscellaneous.

(a)  The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

(b)  All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment. Each payment of principal or interest under this Note shall be paid not later than 2:00 P.M. Peoria, Illinois time on the date due therefor and funds received after that hour shall be deemed to have been received by Payee on the following day. Except as otherwise provided herein, all payments (whether of principal, interest or other amounts) which are applied at any time by Payee to indebtedness evidenced by this Note may be allocated by Payee to principal, interest or other amounts as Payee may determine in Payee's sole discretion. Lender shall notify Borrower when it allocates payments other than to interest and principal.

(c)  This Note shall be governed by and construed under the laws of the State of Illinois.

8.  Severability.

If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the greatest extent permitted by law.

9.  Transfer by Holder.

Payee may assign or sell all of its interest in this Note and all of its rights and security hereunder.

**(Signature Page to Follow)**

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the date and year first above written.

L.R. NELSON CORPORATION

By: *[signature]*

Its: Chief Financial Officer