## DEMAND PROMISSORY NOTE

October 9, 2008                                                                                    $1,500,000

    THIS DEMAND PROMISSORY NOTE is made in Peoria, Illinois as of the date hereof, for up to One Million Five Hundred Thousand Dollars ($1,500,000), with interest as provided herein.

RECITALS:

    A.    This Note is made by LRN Holding, Inc., a Delaware corporation ("Borrower"), and is payable to the order of David P. Ransburg ("Lender"). The holder from time to time of this Note is referred to as "Payee."

    B.    This Note evidences the obligation of Borrower to pay to Lender the principal amount of up to One Million Five Hundred Thousand Dollars ($1,500,000), or, if less, the aggregate amount of all advances made by Lender to Borrower hereunder, with interest on the balance remaining from time to time unpaid at the "Interest Rate" (as hereinafter defined) on the basis hereinafter set forth. The loan evidenced by this Note is referred to herein as the "Loan."

    C.    Payment of this Note is secured by a Security Agreement from Borrower to Lender of even date herewith (the "Security Agreement"). Reference is made to the Security Agreement for a description of the property and the rights of Payee with respect to such security. All of the agreements, conditions, covenants, provisions and stipulations contained in the Security Agreement are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their respective terms.

1.    Payment.

    (a)    ON DEMAND, Borrower hereby promises to pay to the order of Payee the principal sum of up to One Million Five Hundred Thousand Dollars ($1,500,000), or, if less, the aggregate amount of all advances made by Lender to Borrower hereunder, with interest thereon at the Interest Rate. The initial advance, all subsequent advances and all payments made on account of principal shall be endorsed by Lender on Schedule A attached hereto and made a part hereof.

    (b)    The term "Interest Rate" means ten percent (10%) per annum.

    (c)    The term "Maturity Date" shall mean the date of demand by Lender for payment, subject to the acceleration provisions of this Note.

    (d)    In the event any installment of principal or interest hereunder shall become overdue for a period in excess of ten (10) days, Borrower shall pay to the Payee a "late charge" equal to five percent (5%) of the amount unpaid or $25.00, whichever is greater, up to a maximum amount of $250 per payment.

    (e)    This Note may be prepaid, in whole or in part and from time to time, without premium or penalty. Prepayments shall be in a minimum amount of $50,000 and integral multiples thereof. Any prepayments shall be applied first to any unpaid accrued interest or fees due hereunder and then to principal. Partial prepayments shall be applied against future principal payments in the reverse order of maturity.

EXHIBIT F

(f) The obligations of Borrower on this Promissory Note shall be absolute and unconditional in any and all circumstances, and shall not be affected by any circumstances of any character, including, but not limited to any set-off, counterclaim, recoupment, real or personal defense or other right which Borrower may have against the Lender, its successors and assigns, or anyone else for any reason whatsoever.

(g) Notwithstanding any provisions of this Note or any instrument securing payment of the indebtedness evidenced by this Note to the contrary, it is the intent of Borrower and Payee that Payee shall never be entitled to receive, collect or apply, as interest on principal of the indebtedness, any amount in excess of the maximum rate of interest permitted to be charged by applicable law; and if under any circumstance whatsoever, fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by applicable law, then the obligation to be fulfilled shall be reduced to the limit of such validity; and in the event Payee ever receives, collects or applies as interest any such excess, such amount which would be excess interest shall be deemed a permitted partial prepayment of principal and treated hereunder as such; and if the principal of the indebtedness secured hereby is paid in full, any remaining excess funds shall forthwith be paid to Borrower. In determining whether or not interest of any kind payable hereunder, under any specific contingency, exceeds the highest lawful rate, Borrower and Payee shall, to the maximum extent permitted under applicable law, (1) characterize any non-principal payment as an expense, fee or premium rather than as interest and (2) amortize, prorate, allocate and spread to the end that the interest on account of such indebtedness does not exceed the maximum amount permitted by applicable law; provided that if the amount of interest received for the actual period of existence thereof exceeds the maximum lawful rate, Payee shall refund to Borrower the amount of such excess. Payee shall not be subject to any penalties provided by any laws for contracting for, charging or receiving interest in excess of the maximum lawful rate.

(h) Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note.

(i) Unless otherwise agreed to, in writing, or otherwise required by applicable law, payments will be applied first to accrued, unpaid interest, then to principal, and any remaining amount to any unpaid collection costs, late charges and other charges; provided, however, upon delinquency or other default, Lender reserves the right to apply payments among principal, interest, late charges, collection costs and other charges at its discretion. All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion.

2. Default and Remedies.

(a) In the event (1) default is made in the payment of any part of the principal or interest of this Note within five (5) days after the same become due and payable, (2) default is made in the payment of any other sum due pursuant to the terms of this Note or the Security Agreement within five (5) days after the same becomes due and payable, or (3) if an event of default shall occur under and as defined in the Security Agreement and any applicable grace period has expired (collectively, "Events of Default"), Payee shall have the option, without demand or notice, to declare the unpaid principal of this Note, together with all accrued interest and other sums owing hereunder, at once due and payable, and to exercise any and all other rights and remedies available in the Security Agreement or at law or in equity.

(b) The remedies of Payee, as provided herein, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Payee, and may be exercised as

often as occasion therefor shall arise. No act of omission or commission of Payee, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by Payee and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

3. Costs and Attorneys' Fees.

Borrower promises to pay all costs of collection of every kind, including but not limited to all reasonable attorneys' fees, court costs, and expenses of every kind, incurred by Payee in connection with such collection or the protection or enforcement of any or all of the security for this Note, whether or not any lawsuit is filed with respect thereto.

4. Waiver.

Except as otherwise provided herein, each maker, surety, guarantor and endorser hereon waives grace, notice, notice of intent to accelerate, notice of default, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that his or its liability and the liability of his or its heirs, beneficiaries, successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment. It is specifically agreed by the undersigned that the Payee shall have the right at all times to decline to make any such release or change in any security given to secure the payment hereof and to decline to make any such increase, modification, renewal or extension of the indebtedness or its mode and time of payment. This Note shall constitute a joint and several obligation when signed by more than one party.

5. Nonpermitted Transfers.

The Security Agreement provide that any sale, transfer or other alienation of the property securing this Note, or any portion thereof or interest therein, other than as expressly permitted therein, constitutes an Event of Default thereunder and permits the holder of this Note to invoke any remedies therein provided.

6. Notices.

All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given (i) when delivered in person, (ii) when received after deposit in a regularly maintained receptacle of the United States mail as registered or certified mail, postage prepaid, (iii) when received if sent by private courier service, or (iv) on the day on which the party to whom such notice is addressed refuses delivery by mail or by private courier service and (b) addressed as follows:

    To Lender:  David P. Ransburg
            509 E. High Point Rd.
            Peoria, IL 61614

    To Borrower: LRN Holding, Inc.
            509 E. High Point Rd.
            Peoria, IL 61614
            Attn: David P. Ransburg

or to each such party at such other addresses as such party may designate in a written notice to the other parties.

7. Miscellaneous.

(a) The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

(b) All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment. Each payment of principal or interest under this Note shall be paid not later than 2:00 P.M. Peoria, Illinois time on the date due therefor and funds received after that hour shall be deemed to have been received by Payee on the following day. Except as otherwise provided herein, all payments (whether of principal, interest or other amounts) which are applied at any time by Payee to indebtedness evidenced by this Note may be allocated by Payee to principal, interest or other amounts as Payee may determine in Payee's sole discretion. Lender shall notify Borrower when it allocates payments other than to interest and principal.

(c) This Note shall be governed by and construed under the laws of the State of Illinois.

8. Severability.

If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the greatest extent permitted by law.

9. Transfer by Holder.

Payee may assign or sell all of its interest in this Note and all of its rights and security hereunder.

IN WITNESS WHEREOF, Borrower has executed and delivered this Note as of the date and year first above written.

LRN HOLDING, INC.

By: *[signature]*

Its: Chairman & CEO

308-0852

## Schedule A

Schedule A to Demand Promissory Note dated October 9, 2008 of LRN Holding, Inc. payable to the order of David P. Ransburg.

### LOANS AND PRINCIPAL PAYMENTS

|   | Date | Amount of Loan Made | Amount of Principal Repaid | Unpaid Principal Balance | Notation Made By |
|---|------|---------------------|----------------------------|--------------------------|------------------|
| #1 | 10/9/08  | $1,000,000 |        | 1,000,000 | WR |
| #2 | 11/13/08 | 100,000    | NC     | 1,100,000 | WR |
| #3 | 11/21/08 | 100,000    | NC     | 1,200,000 | WR |
| #4 | 2/6/09   | 100,000    | JPM    | 1,300,000 | WR |
| #5 | 3/9/09   | 100,000    | NC     | 1,400,000 | WR |
| #6 | 4/2/09   | 100,000    | NC     | 1,500,000 | WR |

The aggregate unpaid principal amount shown on this Schedule A shall be rebuttable presumptive evidence of the principal amount owing and unpaid on this Demand Promissory Note. The failure to record the date and amount of any advance on this Schedule A shall not, however, limit or otherwise affect the obligations of the undersigned under this Demand Promissory Note to repay the principal amount of the advances.

## **SECURITY AGREEMENT**

This Security Agreement is dated as of October 9, 2008 between LRN Holding, Inc., a Delaware corporation ("Debtor"), and David P. Ransburg ("Lender").

1. <u>Description of Collateral</u>. Debtor hereby grants to Lender a security interest in the following described assets and any and all additions, accessions and substitutions thereto or therefor (collectively referred to as the "Collateral").

   a. All equipment, machinery, furniture, furnishings, and any and all other tangible personal property, and all additions, accessions and substitutions thereto or therefor now owned or hereafter acquired by the Debtor (collectively referred to as "Equipment");

   b. All accounts receivable, contract rights, chattel paper, documents, instruments, general intangibles, as such term is defined in the Illinois Uniform Commercial Code (810 ILCS 5/1-101 *et. seq.*) (the "UCC") as in effect from time to time, all accounts, as such term is defined in the Illinois Uniform Commercial Code as in effect from time to time, and other forms of obligation and other rights to the payment of money, now owned or which may hereafter arise in favor of the Debtor (hereinafter called "Accounts");

   c. All of the Debtor's inventory, including all goods, merchandise, materials, raw materials, work in process, finished goods and other tangible personal property now owned or hereafter acquired and held for sale or lease or furnished or to be furnished under contracts of services or used or consumed in the Debtor's business, and any documents of title representing any thereof (hereinafter called "Inventory");

   d. All investment property, as defined in the UCC, owned by Debtor;

   e. All patents, trademarks, copyrights and other intellectual property and proprietary rights of Debtor;

   f. All proceeds, recoveries, or compensation received by Debtor, by way of judgment, settlement, award, or any other means, in the following lawsuits:

   (i) L.R. Nelson Corporation v. Mayer Brown, et al, Peoria County Case No. 05 L 461; and

   (ii) L.R. Nelson Corporation v. Great American Insurance Company, Central District of Illinois, Case No. 06 L 1252.

   g. All proceeds, including insurance proceeds, and products of (a), (b), (c), (d), (e) and (f) above.

2. <u>Obligations</u>. The security interest granted hereby is to secure the payment and performance of all of the liabilities and obligations of Debtor to Lender hereunder and also any and all other obligations of Debtor to Lender under the Demand Promissory Note from Debtor to Secured Party of even date herewith in the face principal amount of up to $1,500,000.

3. <u>Warranties</u>. Debtor represents and warrants as follows:

  a. Debtor is duly organized and existing under the laws of the State of Delaware and is duly qualified and in good standing in every other state in which it is doing business. The exact name of Debtor is correctly stated in the first paragraph of this Agreement.

  b. The execution, delivery and performance hereof are within Debtor's corporate powers, have been duly authorized, are not in contravention of law or the terms of Debtor's organizational documents, or of any indenture, agreement or undertaking to which Debtor is a party or by which it is bound.

  c. Debtor's (i) sole place of business (or its chief executive office, if it has more than one place of business); and (ii) the office where it keeps its records concerning the Collateral is at the address stated in Section 17 of this Agreement.

  d. The Debtor is the sole and absolute owner of the Collateral free and clear of liens and encumbrances of every kind and nature except only (i) the lien and encumbrance hereby granted and created, and (ii) other liens and encumbrances disclosed in writing to Lender by Debtor.

  e. The Debtor has signed no financing statements covering the above described property, except the financing statements signed with respect to this Security Agreement or pursuant to liens described in (d) above.

  f. The officers of the Debtor executing this Security Agreement have been duly elected and qualified and have been duly authorized and empowered so to execute and deliver this Security Agreement on behalf of the Debtor.

4. <u>Records</u>. Debtor will at all reasonable times and from time to time allow Lender by or through any of its officers, agents, employees, attorneys or accountants, to examine and inspect and make extracts or copies from Debtor's books and other records to arrange for verification of the Collateral, directly with account debtors or by other methods. Debtor will furnish to Lender upon request statements of any account, together with all notes or other papers evidencing the same and any guaranties, securities or other documents and information relating thereto; and generally at all times and from time to time furnish to Lender such statements and information as it may reasonably request.

5. <u>Covenants</u>. The Debtor hereby covenants and agrees with Lender that so long as the Debtor shall owe any amounts under any of the Obligations to Lender, the Debtor will:

  a. Maintain the Collateral in good working order, condition and repair;

  b. Keep the Collateral in its possession and control, and within the continental United States;

  c. Provide to Lender from time to time, upon the request of the Lender, a listing of the Collateral specifying the physical location and the then condition of each item thereof;

  d. From time to time at the request of Lender, do, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Lender may require, to more completely vest in and assure to Lender its rights hereunder and in or to the Collateral and the proceeds thereof;

  e. Immediately notify Lender in writing of the opening of any new office or place of business or the closing of any of its existing offices or places of business and of any change in the

location of its chief executive office or the places where its records concerning the Collateral are kept; and

  f. Maintain the existence of Debtor as described in Section 3a above, and not change any of the matters stated in said Section without the written consent of Lender.

 6. <u>Financing Statements</u>. At the request of Lender, Debtor shall execute one or more financing statements pursuant to the Illinois Commercial Code in a form satisfactory to Lender and will pay the cost of filing the same in all public offices wherever filing is deemed by Lender to be necessary or desirable. Without the written consent of Lender, Debtor will not allow any financing statement covering any Collateral, proceeds thereof or any of Debtor's inventory to be on file in any public office. The Debtor will pay all costs of filing any financing, continuation or termination statements with respect to the security interest created by this Security Agreement.

 7. <u>Accounts</u>.

  a. Lender authorizes Debtor to collect any and all amounts owing on all Accounts subject to this agreement, and Debtor shall use its best efforts to effect the prompt collection of such Accounts. The Lender may, at its election, notify any debtor on any Account of the assignment thereof and effect collection of any Account directly from the debtor obligated thereon. Lender shall have full power to collect, compromise, endorse, sell or otherwise deal with the accounts or proceeds thereof in its own name or that of Debtor.

  b. Debtor hereby irrevocably appoints Lender, or any person designated by Lender, its attorney in fact to receive, open and dispose of all mail addressed to Debtor, to endorse the name of Debtor on any notes, acceptances, checks, drafts, money orders or other remittances, to endorse the name of Debtor on any invoice, freight or express bill or bill of lading, storage receipt, warehouse receipt or other instrument or document in respect to any account subject to this agreement, to sign the name of Debtor to drafts against account debtors, assignments or verifications of Accounts subject to this agreement and notices to account debtors, and to do all other acts and things necessary to carry out the intent of this Security Agreement. The authority granted Lender shall remain in full force and effect until all Accounts subject to this Security Agreement have been paid in full.

  c. Upon request of Lender at any time after the occurrence of an event of default, Debtor will notify such account debtors and will indicate on all billings to such account debtors that the Accounts are payable to Lender. Any proceeds of Accounts thereafter received by Debtor shall be turned over to Lender daily in the exact form in which they are received.

  d. After the occurrence of an event of default, the Debtor will not, without the written consent of Lender, grant any extension of the time of payment of the Accounts, compromise, compound and settle the same for less than the full amount thereof, release, wholly or partly, any person liable for the payment thereof or allow any credit or discount whatsoever thereon, other than trade discounts specifically noted at the time of assignment.

  e. Upon the request of Lender at any time after the occurrence of an event of default, the Debtor will deliver to Lender all original and other documents evidencing, and relating to, the sale and delivery of merchandise or the performance of labor or services which created the Accounts, including, but not limited to, all original orders, invoices and shipping receipts.

  f. Lender shall have the right, at the Debtor's expense, to make test verifications of all Accounts in any manner and through any medium Lender considers advisable, and the Debtor agrees to furnish all such assistance and information as Lender may require in connection therewith.

g.  The Debtor will furnish to Lender, at the Debtor's expense, the following reports: reconciliation of all Accounts; an aging of all Accounts; trial balances; a test verification of all Accounts; and such other reports and information relating to the Accounts as Lender may request. All reports shall be in form satisfactory to Lender and shall be furnished to Lender at such times as Lender may request.

h.  The Debtor will stamp, in form and manner satisfactory to Lender, the Debtor's accounts ledger and other books and records pertaining to the Accounts with an appropriate reference to the fact that the Accounts and the proceeds thereof have been assigned to Lender.

8.  Inventory. After the occurrence of an event of default, Lender shall have the right to immediate possession of all Inventory and its products and proceeds. Lender shall have the right at all times to inspect the Inventory and the Debtor's records pertaining thereto. None of the Inventory shall be removed or disposed without Lender's written consent, except to bona fide purchasers thereof in the ordinary course of the Debtor's business. Upon Lender's request, after the occurrence of an event of default, the Debtor will:

a.  From time to time, at the Debtor's expense, pledge and deliver the Inventory to Lender or to a third party as Lender's bailee; to hold the same in trust for Lender's account; or store the same in a warehouse or warehouses in Lender's name; or deliver to Lender documents of title representing the same; or evidence Lender's security interest in the Inventory and the proceeds and products thereof in such other manner as may be acceptable to Lender.

b.  Remove or dispose of Inventory (whether or not to bona fide purchasers in the ordinary course of the Debtor's business) only on orders approved by Lender in writing.

c.  Report all sales of Inventory to Lender in a form satisfactory to Lender at such times as Lender may request.

9.  Insurance. The Debtor shall insure at its expense, and keep insured by solvent insurers, all Collateral in such amounts as similar goods are usually insured by companies similarly situated, against loss or damage of the kinds usually insured against by companies similarly situated, and upon Lender's request, the policies evidencing such insurance shall be duly endorsed in Lender's favor and certificates evidencing such insurance shall be provided to Lender. If the Debtor defaults in this regard, Lender shall have the right to insure and charge the cost to the Debtor. Lender assumes no risk or responsibility in connection with the payment or non-payment of losses, the only responsibility of Lender being to credit the Debtor with any insurable payments received on account of losses.

10.  Taxes. All taxes that may be assessed upon or paid by Lender with respect to any of the Collateral shall be charged to and paid by the Debtor who agrees to indemnify Lender against loss by reason of any such taxes. The Debtor will make due and timely payment or deposit of all federal, state and local taxes, assessments or contributions required of the Debtor by law, and will execute and deliver to Lender, on demand, appropriate certificates attesting to the payment or deposit thereof.

11.  Proceeds. The proceeds from the sale or other disposition of the Collateral that are delivered by Debtor to Lender, or the net sums collected directly by Lender, after first deducting all costs of collection, shall be credited against the amount owed by Debtor.

12.  Default.

  a. If Debtor fails to pay when due to Lender any amount payable on any Obligations, or fails to observe or perform any of the covenants and warranties in this Security Agreement or in any loan agreement with Lender, Debtor shall be in default.

  b. In addition, at the election of Lender and without necessity of demand or notice, all or any part of the indebtedness of Debtor secured hereby shall become immediately due and payable, irrespective of any agreed maturity date, on the occurrence of any of the following events of default:

   (i) Any warranty, representation, financial statement, or other information made, given, or furnished to Lender by or on behalf of Debtor shall prove to have been untrue in any material respect when made, given, or furnished; or

   (ii) The issuance or filing of any attachment, levy, garnishment, or other judicial process of or on Debtor or any of the Collateral; or

   (iii) The sale or other disposition by Debtor of any substantial portion of its assets or property, except in the ordinary course of business; or, dissolution, termination of existence, insolvency, business failure, or assignment for the benefit of creditors of or by Debtor; or commencement of any proceedings under any state or federal Bankruptcy or insolvency laws by or against Debtor; or the appointment of a receiver or trustee for all or any party of the property of Debtor.

 13. <u>Remedies</u>. On any such default or election by Lender under this agreement, and at any time thereafter:

  a. Lender may declare all Obligations secured under this Security Agreement immediately due and payable and may proceed to enforce payment and exercise any and all of the rights and remedies provided by the Illinois Commercial Code, as well as any and all other rights and remedies possessed by Lender.

  b. Lender shall have the right to take immediate possession of the Collateral, and for that purpose may pursue the same wherever the Collateral may be found, and may enter upon any of the premises of the Debtor with or without force or process of law, wherever the Collateral may be or may be supposed to be, and search for the same, and, if found, take possession of and remove the Collateral, or any part thereof. The Debtor shall, upon Lender's request, assemble the Collateral and make the Collateral available to Lender at any place designated by Lender which is reasonably convenient to the Debtor.

  c. Lender may sell at public or private sale, for such price as Lender may deem fair, any and all of the Collateral and any other security or property held by Lender. Lender may be the purchaser of the Collateral or other property or security so sold and may hold the Collateral thereafter in its own right absolutely against any claims of Debtor or right of redemption.

  d. In the case of public sale, notice shall be deemed to be adequate and reasonable if such notice appears three (3) times in a newspaper published in the City or County wherein the sale is to be held, the first such publication being at least ten (10) days before such sale. In the case of a private sale, notice shall be deemed to be adequate and reasonable if such notice is mailed to the Debtor at its last known address at least ten (10) days before such sale.

  e. The net proceeds of any sale or sales shall be applied against the amount owed Lender by Debtor and any other indebtedness of Debtor to Lender. Debtor shall forthwith pay to Lender any deficiency on demand of Lender and shall be entitled to any surplus resulting from such sale or sales.

5

Demand of performance, advertisement, and presence of the Collateral at sale are hereby waived by Debtor. All demands and presentments of every kind or nature are expressly waived by Debtor.

  f. Lender may require Debtor to assemble the Collateral at a place mutually convenient to Lender and Debtor at the expense of Debtor.

 14. Expenses. Debtor shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorneys' fees, reasonably incurred or expended by Lender in the recovery and sale or attempted recovery and sale of Collateral and in protecting and enforcing the Obligations and other rights of Lender hereunder.

 15. Termination. This Security Agreement shall be terminable only by the filing of a termination statement in accordance with applicable provisions of the Illinois Commercial Code. Until terminated, the security interest created hereunder shall continue in full force and effect and shall secure and be applicable to all advances now or hereafter made by Lender to Debtor, whether or not Debtor is indebted to Lender immediately prior to the time of any such advance. Any termination of this Security Agreement by either party shall not affect the obligation of Debtor or Lender with respect to accounts assigned by Debtor to Lender prior to such termination.

 16. Applicable Law.

  a. The validity of this Security Agreement and any provision hereof shall be determined under and shall be construed according to the Illinois Commercial Code and other applicable laws of the State of Illinois, and all duties of the parties created under this Security Agreement are performable in the State of Illinois.

  b. Unless otherwise defined, all terms used in this Security Agreement that are defined in the Illinois Commercial Code shall have the same meaning in this Security Agreement as herein defined.

 17. Notices. All notices provided for herein shall be in writing and shall be deemed to have been given when delivered personally or when deposited in the United States mail, postage prepaid, addressed as follows, or to such other address as may hereafter be designated in writing by the respective parties hereto:

   To Lender:  David P. Ransburg
         509 E. High Point Road
         Peoria, IL 61614

   To Borrower: LRN Holding, Inc.
         509 E. High Point Road
         Peoria, IL 61614
         Attn: David P. Ransburg

 18. No Waiver. The failure of Lender to exercise any right or remedy, including acceptance by Lender of partial or delinquent payments, shall not constitute a waiver of any obligation from Debtor or right of Lender or constitute a waiver of any other similar default occurring subsequently.

 19. Intent. This Security Agreement expresses the entire understanding of the parties and may not be altered or amended except with the written consent of each of the parties and except as provided in any other written document signed and delivered by Debtor to Lender.

6

20. *Successors and Assigns.* This Security Agreement shall be binding upon and inure to the benefit of the Debtor and Lender and their respective successors and assigns.

In Witness Whereof, the parties have executed this Security Agreement as of the first date above written.

LRN Holding, Inc.

By: *[signature: David P Ransburg]*
Its: Chairman & CEO

*[signature: David P Ransburg]*
DAVID P. RANSBURG

308-0853



# STATE OF DELAWARE
# DIVISION OF CORPORATION

DATE:   10/21/08

TO:  Vicky

FAX  1-309-637-8514
PHONE

FROM:    HAZEL GROOMS
PHONE:    (302) 857-3492
FAX:       (302) 739-2188

Page count:3

INFO REQUESTED:

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
3096376000

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

MICHAEL R. SEGHETTI
416 MAIN STREET
SUITE 1400
PEORIA IL 61602

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:30 PM 10/13/2008
INITIAL FILING # 2008 3449525
SRV: 081032589

## 1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| IRN HOLDING, INC. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 509 E. HIGH POINT ROAD | PEORIA | IL | 61614 | US |
| | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | | |
| | CORPORATION | DE | | |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | | |

## 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| RANSBURG | DAVID | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 509 E. HIGH POINT ROAD | PEORIA | IL | 61614 | US |

**4. This FINANCING STATEMENT covers the following collateral:**
Collateral Description - please see attachment

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)  [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA

## ATTACHMENT TO FINANCING STATEMENT

a. All equipment, machinery, fixtures, furnishings, and any and all other tangible personal property, and all additions, accessions and substitutions thereto or therefor now owned or hereafter acquired by the Debtor (collectively referred to as "Equipment");

b. All accounts receivable, contract rights, chattel paper, documents, instruments, general intangibles, as such term is defined in the Illinois Uniform Commercial Code (810 ILCS 5/1-101 et. seq.) (the "UCC") as in effect from time to time, all accounts, as such term is defined in the Illinois Uniform Commercial Code as in effect from time to time, and other forms of obligation and other rights to the payment of money, now owned or which may hereafter arise in favor of the Debtor (hereinafter called "Accounts");

c. All of the Debtor's inventory, including all goods, merchandise, materials, raw materials, work in process, finished goods, and other tangible personal property now owned or hereafter acquired and held for sale or lease or furnished or to be furnished under contracts of services or used or consumed in the Debtor's business, and any documents of title representing any thereof (hereinafter called "Inventory");

d. All investment property, as defined in the UCC, owned by Debtor;

e. All patents, trademarks, copyrights, and other intellectual property and proprietary rights of Debtor;

f. All proceeds, recoveries, or compensation received by Debtor, by way of judgment, settlement, award, or any other means in the following lawsuits:

(i) L.R. Nelson Corporation v. Mayer Brown, et al, Peoria County Case No. 05 L 461; and

(ii) L.R. Nelson Corporation v. Great American Insurance Company, Central District of Illinois, Case No. 06 L 1252;

g. All proceeds, including insurance proceeds, and products of (a), (b), (c), (d), (e) and (f) above.

308-0861