UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **RUBBERMAID INCORPORATED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 09-1395 |
| ) | |
| **ROBERT BOSCH TOOL** ) | |
| **CORPORATION, et al.** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

Now before the Court are Defendants Robert Bosch Tool Corporation's, Barry MacLean's, J. Fred Risk's, and David P. Ransburg's ("Individual Defendants") Motions to Dismiss[1] pursuant to Federal Rule of Civil Procedure 12(b).  For the reasons set forth below, Individual Defendant's Motions [#36], [#38], [#40] are GRANTED IN PART AND DENIED IN PART.

### BACKGROUND[2]

Plaintiff Rubbermaid Incorporated ("Rubbermaid") filed its Complaint [#3] against Defendants Robert Bosch Tool Corporation, Barry L. MacLean, J. Fred Risk, David P. Ransburg, LRN Holding, Inc., and John and Jane Does in the Central District of Illinois on November 25, 2009.  Rubbermaid then filed an amended complaint [#32] on March 3, 2010.

---

[1] In the interest of clarity, the Court will address Defendants' three separate motions to dismiss in this single order.

[2] Unless otherwise noted, the background is taken from allegations in Plaintiff's Complaint and presumed to be true for purposes of resolving this Motion.

Individual Defendants filed their Motions to Dismiss the Amended Complaint in early April 2010.

Rubbermaid is the owner of various trademarks having particular value. L.R. Nelson Corporation (later known as LRN Holding) ("LRN") manufactured and sold sprinklers, nozzles, timers, and other products related to watering lawns and gardens. Barry L. MacLean, J. Fred Risk, and David P. Ransburg are officers, directors, and shareholders of LRN ("Directors"). Bosch Tool Corporation ("Bosch") is a successor-in-interest to the judgment debtor, LRN, from a previously resolved dispute between Rubbermaid and LRN. This dispute resutled in a $2.75 million principal judgment being entered against LRN in North Carolina. Rubbermaid recorded this judgment in the Central District of Illinois on August 24, 2009 [Case No. 09-1053].

Rubbermaid and LRN negotiated terms of a licensing agreement in the fall of 2005 whereby Rubbermaid granted LRN use of its intellectual property in the sale of certain LRN products in return for royalty payments on those products. The license contained a guaranteed minimum periodic royalty payment clause. At or before the time of this agreement, LRN allegedly retained the services of a financial consulting firm to assist with LRN's financial difficulties. Rubbermaid was not aware of LRN's financial troubles. As of 2006, LRN had only paid $150,000 of the $1.1 million license agreement and requested that Rubbermaid amend the license agreement to reduce the minimum royalties figure for 2007, claiming that Rubbermaid prevented LRN from effectively launching royalty products. LRN did not disclose the company's financial difficulties. Rubbermaid amended the agreement in June 2006.

From 2006 until 2008, LRN still failed to pay on the license agreement and allegedly entered into several loan agreements with outside organizations such as Wells Fargo Foothill,

Inc. ("Wells Fargo") and National City Bank ("NCB"). During this time, LRN also executed promissory notes and negotiated security interests with Defendants Ransburg, Risk, and MacLean while negotiating a further decrease in its minimum royalty payments to Rubbermaid in a second amended license agreement. In 2008, LRN started marketing its sale, which it did not disclose to Rubbermaid. LRN also renegotiated its lending agreement with Wells Fargo. LRN did not repay its promissory notes owed to Risk and MacLean nor did Risk or MacLean attempt to enforce the terms of their notes.

In March 2008, Rubbermaid filed a claim against LRN for breach of a license agreement and was granted a $2.75 million judgment. While this claim was being litigated, LRN allegedly entered into two separate agreements to convey all of its business assets. LRN conveyed one of its smaller divisions to Signature Control Systems, Inc. LRN conveyed the substantial remainder of its business assets to Defendant Bosch. In this agreement, Bosch allegedly agreed to assume all of LRN's debts and obligations except for the license agreement with Rubbermaid. After these transactions, Rick, MacLean, and Ransburg released their security interests and liens. Risk and MacLean then allegedly received personal guarantees from Ransburg for $1 million from Ransburg's personal funds. Risk, MacLean, and Ransburg were later allegedly paid over $4 million with funds collected on the sale of LRN's business assets. Bosch was purportedly responsible for earmarking several of these payments by collecting, identifying, and segregating amounts collected from one of LRN's accounts.

Rubbermaid alleges counts against Defendants MacLean, Risk, and Ransburg for (1) insider preferences (Count I); (2) fraudulent transfer with intent to hinder, delay, or defraud (Count II); (3) fraudulent transfers not made in good faith (Count III); (4) insider debt

recharacterization (Count IV); (5) equitable subordination (Count V); (6) equitable trust (Count VI); and (7) alter ego and veil piercing (Count IX).  Additionally, Rubbermaid alleges a fraudulent transfer count (Count X) against Defendant Bosch. Finally, Rubbermaid alleges counts against Individual Defendants for (1) civil conspiracy to commit fraud (Count VII), and (2) aiding and abetting fraudulent transfers (Count VIII).

Individual Defendants have now moved to dismiss these counts.  Rubbermaid filed its response, and this Order follows.

## DISCUSSION

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  In other words, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," and its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Services, Inc.* 496 F.3d 773, 776 (7th Cir. 2007). Conclusory allegations are "not entitled to be assumed true."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (citing *Twombly*, 550 U.S. 544 (2007)).

In a motion to dismiss, a complaint is construed in the light most favorable to the plaintiff, its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110

F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

In fraud cases, however, the claim must be stated with particularity. FED. R. CIV. P. 9(b). This heightened pleading requirement is satisfied by stating the "who, what, when, and how" of the alleged fraud. *Rao v. BP Products North America, Inc.*, 589 F.3d 389 (7th Cir. 2009). The plaintiff must describe the time, place, and content of the circumstances of fraud, and it must identify the parties to the fraud. *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074, 1078 (7th Cir. 1997). Under this rule, state of mind may be pleaded generally. FED. R. CIV. P. 9(b). While this is a heightened pleading requirement, this standard is a "plausability standard" and not a "fact pleading" standard. *Swanson v. Citibank, N.A.*, 2010 WL 2977297 at *5 (7th Cir., July 30, 2010).

I.     **Uniform Fraudulent Transfer Act ("UFTA") claims (Counts I-III, X)**

The heightened pleading standards for fraud claims under Federal Rule of Civil Procedure 9(b) apply to UFTA claims as well. In order to establish actual fraud under the UFTA, the debtor must "transfer property with the specific intent to hinder, delay or defraud its creditors." 740 ILCS160/5(a)(1). The UFTA also provides eleven "badges of fraud" for the Court to consider in determining whether the debtor possessed the requisite intent for fraud. 740 ILCS 160/5(b). Additionally, the UFTA provides that a transfer is fraudulent as to a creditor whose claim arose before the transfer was made if (1) the transfer was made to an insider for an antecedent debt; (2) the debtor was insolvent at that time; and (3) the insider had reasonable cause to believe that the debtor was insolvent. 740 ILCS 160/6(b).

Here, Plaintiff has sufficiently pled its UFTA claims regarding LRN's transfers of assets

to Ransburg, MacLean, and Risk. LRN was allegedly insolvent as of June 5, 2007, and Individual Defendants were aware, or had reasonable cause to believe, that LRN was insolvent. *See* Amended Complaint (Am.Compl.) ¶¶ 55, 56. At that time, LRN entered into a promissory note obligating LRN to pay Defendants Risk and MacLean each $2 million. As of June 2007, Rubbermaid was owed almost $3 million under the existing license agreement and, as of March 23, 2007, Rubbermaid had initiated proceedings against LRN in the Northern District of Ohio. Am.Compl. ¶¶ 41, 57-58. Furthermore, after Rubbermaid initiated its action in the Western District of North Carolina on March 12, 2008, LRN transferred a total of around $5 million to Defendants Ransburg, Risk, and MacLean on September 18, 2008 and on March 6, 2009. Am.Comp. ¶¶ 284-289.

In addition, Rubbermaid has sufficiently pled its UFTA claim against Defendant Bosch. Bosch assumed all of LRN's liabilities and obligations under its agreement with LRN. Am.Compl. ¶116. Bosch also allegedly agreed to collect specific amounts of money on one of the LRN divisions for the benefit of Defendants Risk and MacLean. Am.Compl. ¶¶154, 155. Furthermore, at that time, Bosch was also aware that Plaintiff had not been paid on its contract and had initiated proceedings against LRN. Am.Compl. ¶158. Finally, Bosch has maintained the same physical plant and operating lines as well as continuing to employ virtually all LRN employees operating in their same capacities including LRN executives. Am.Compl. ¶¶ 188-195.

The Court has not chosen to convert this motion to a motion for summary judgment. As such, the Court will not consider the extraneous documentation attached by Defendants to their motion as such documents were neither included in Plaintiff's Complaint nor central to the

claim. *See Albany Bank & Trust Co. V. Exxon Mobile Corp.*, 310 F.3d 969 (7th Cir. 2002).

Defendants also argue that the claim should be dismissed because it is not actionable under the UFTA as the funds are encumbered by valid liens. The question of whether Individual Defendants' payments were encumbered by valid liens is a question of fact under the UFTA to be determined at a later stage in these proceedings. 740 ILCS 160/2(b). At this stage, however, the Court does not view this argument as a sufficient cause to dismiss Rubbermaid's UFTA claims. A motion to dismiss under Federal Rule of Civil Procedure 12 tests the sufficiency of the complaint rather than the merits of the case. FED. R. CIV. PRO. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7 Cir. 1990). Furthermore, the Court must view all well-pleaded allegations of the complaint in the light most favorable to the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). While it is yet to be seen whether Plaintiff can actually prove any of these allegations to support these claims under the UFTA, they are sufficient to withstand this Motion to Dismiss.

**II.    Equitable claims (Counts IV and V)**

The Court agrees with Defendants' assertions that Plaintiff's equitable subordination and insider debt recharacterization claims are solely within the purview of the Bankruptcy Courts. While the Court has taken Plaintiff's cited cases under consideration, it does not find them either controlling nor persuasive. Equitable subordination, a judge-made doctrine, is codified in the Bankruptcy Code at 11 U.S.C. § 510(c). This provision of the Code "allows a bankruptcy court to reprioritize a claim." *In re Kreisler*, 546 F.3d 863, 866 (7th Cir. 2008); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 342 (7th Cir. 1997). Debt recharacterization, in the same vein, is a "theory . . . that bankruptcy courts may place the proper label . . . on an advance of funds." *In re*

*Airadigm Communications, Inc.*, 2010 WL 3024876 (7th Cir., Aug. 4, 2010).  As discussed in the cases within this circuit, these claims are bankruptcy claims best determined in a bankruptcy court.

### III.     Equitable trust claim (Count VI)

A constructive trust is an equitable remedy.  *Clair v. Harris Trust and Sav. Bank*, 190 F.3d 495 (7th Cir. 1999); *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703 (7th Cir. 1999).  A constructive trust may be imposed "when fraud is proven." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 16 F.Supp. 2d 941, 952 (N.D. Ill. 1998).  This type of trust, however, is not an independent cause of action.  *Id.* 16 F.Supp.2d at 952; *Scholes v. Ames*, 850 F.Supp. 707, 712-713 (N.D. Ill. 1994).  Instead, courts have consistently held that a constructive trust is a particular type of remedy.  *DeGeer v. Gillis*, 2010 WL 1609914 (N.D. Ill. 2010); *Cashen v. Integrated Portfolio Management, Inc.*, 2008 WL 4976210, at *5 (N.D.Ill. Nov. 20, 2008).

The Northern District of Illinois dealt with this same issue in a motion to dismiss earlier this year in *DeGeer*.  *DeGeer*, 2010 WL 1609914.  In that case, the court dismissed the count in which the plaintiff alleged a constructive trust should be enforced.  In so doing, however, the court also held that the plaintiff could replead his constructive trust allegations as a remedy, as opposed to a separate claim for relief, for his other surviving substantive claims.  This Court does the same here.  Thus, Count VI of Plaintiff's First Amended Complaint must be dismissed.  However, Plaintiff is given leave to replead the equitable remedy of constructive trust as a remedy to its remaining claims against Individual Defendants.

## IV.     Civil conspiracy claims (Counts VII, VIII, and X)

The UFTA does not specifically provide for a conspiracy cause of action; however, the UFTA may be supplemented by applicable state law claims such as conspiracy and aiding and abetting.  740 ILCS 160/11.  Illinois state law does recognize a cause of action for conspiracy to commit fraud.  *Martinez v. Freedom Mortgage Team, Inc.*, 527 F.Supp.2d 827, 839 (N.D. Ill. 2007).  Similarly, while "aiding and abetting" is not a separate tort, aiding and abetting fraud is a separate actionable claim.  *Hefferman v. Bass*, 467 F.3d 596, 601-602 (7th Cir. 2006).  Because Plaintiff's UFTA claims do meet the heightened pleading requirements under Rule 9(b), there are underlying fraudulent transfer claims to permit the pleading of conspiracy to commit fraud and aiding and abetting fraud.

Furthermore, Illinois courts have recognized civil conspiracy claims as well as aiding and abetting claims against non-transferee defendants where transfers were made as part of a scheme to defraud, hinder, or delay creditors.  *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1366 (7th Cir. 1990); *Fortney v. Kuipers*, 2001 WL 1539143 (N.D. Ill. 2001); *Firstar Bank, N.A. v. Faul*, 2001 WL 1636430 (N.D. Ill. 2001).  In alleging a conspiracy to commit fraud involving multiple defendants, the complaint must conform to Rule 9(b)'s heightened pleading requirements for each defendant.  *D & G Enterprises v. Continental Illinois Nat. Bank and Trust*, 574 F.Supp. 263 (N.D. Ill. 1983).  The complaint need not, however, plead detailed evidentiary matters.  *Id.*  Furthermore, the heightened pleading standard does not require fact pleading. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Swanson v. Citibank, N.A.*, 2010 WL 2977297 (7th Cir. 2010).

Here, Plaintiff has alleged sufficient facts in its First Amended Complaint to survive this

motion. Bosch agreed with LRN and Individual Defendants to collect, identify, and segregate amounts from an LRN account for the benefit of Defendants Risk and MacLean. Am.Compl. ¶154. From September to March 2008, these funds were transferred to Risk and MacLean. Am.Compl. ¶29. Additionally, Individual Defendants entered into an agreement with Defendant Bosch on September 18, 2008 to convey substantially all of LRN's assets while maintaining LRN's original corporate structure, physical site, and management personnel. Am.Compl. ¶¶111, 188-195.

## V.     Veil piercing claim (Count IX)

Plaintiff correctly states in a footnote to its Memorandum in Opposition to Defendant Ransburg's Motion to Dismiss that the law of the state of incorporation governs under what circumstances it is possible to pierce the corporate veil. *See* 805 ILCS §180/45-1; *Gross v. Security Assocates Intern., Inc.*, 2009 WL 3837435 (N.D. Ill. 2009); *Bright v. Roadway Services, Inc.*, 846 F.Supp. 693, 700 fn. 8 (N.D. Ill. 1994). Thus, when analyzing this issue, the Court will look to Delaware law as LRN was incorporated in Delaware.

Under Delaware law**,** a corporation is a "separate and distinct" legal entity from its shareholders, directors, and officers and those parties are not liable for any of the corporation's debts and liabilities. *Gross*, 2009 WL 3837435 at *10. Under the alter ego theory, courts may "pierce the veil" of the corporate entity and "hold any individuals or entities liable that used the corporation as an instrumentality." *Id*. In its complaint, a plaintiff must plead "facts supporting an inference that the company created a sham entity designed to defraud . . . creditors." *U.S. Bank Nat. Ass'n v. U.S. Timberlands Klamath Falls*, 2005 WL 2093694 at *1 (Del. Ch. 2005); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Factors the court may consider in this

analysis include "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was insolvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *U.S. Bank Nat. Ass'n*, 2005 WL 2093694 at *1.

As Plaintiff stated, this is a fact-intensive inquiry. *Id.* As such, this issue is best determined at a later stage in the proceedings. Even so, Plaintiff has pled sufficient facts to provide an inference that LRN created LRN Holding designed to defraud bona fide creditors. Here, Plaintiff asserts that LRN is an insolvent shell entity as of its sale to Bosch and was insolvent before this transaction. Am.Compl. ¶185. After this sale, however, LRN Holding continued making payments to Individual Defendants as directed by Defendant Ransburg along with other Individual Defendants. Am.Compl. ¶¶162, 166, 168, 170, 173, 179-180. Given these facts as pleaded, the motion to dismiss the veil piercing claim is denied.

## VI.   Successor liability claim (Count XI)

In general, a corporation that purchases business assets of another corporation does not become liable for debts of a seller in absence of express agreement to assume seller's debt. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997). Viewing the well-pleaded facts in the light most favorable to the Plaintiff, this express agreement to assume all debts and obligations existed as of the September 2008 agreement between Bosch and LRN. Am.Compl. ¶¶111, 116. Furthermore, according to the Complaint, Bosch was aware of the action pending against LRN as well as the unpaid royalty payments owed to Plaintiff. Am.Compl. ¶157. Thus, these pleadings are sufficient to overcome the motion to dismiss on this

count.[3]

### VII. Post-Judgment relief claim (Count XII)

The Court does not recognize Count XII as a separate legal ground for relief. Instead, this Count is interpreted as a consolidation of Plaintiff's prayers for relief regarding its previous claims. Thus, to the extent that Count XII is a separate cause of action, it will be dismissed; however, the Court will construe the language contained in "Count XII" as Plaintiff's prayer for relief.[4]

### CONCLUSION

For the reasons set forth above, Defendants Robert Bosch Tool Corporation, Barry MacLean, J. Fred Risk, and David P. Ransburg's Motions to Dismiss [#36], [#38], [#40] are GRANTED IN PART AND DENIED IN PART. This matter is referred to the Magistrate Judge for further proceedings.

ENTERED this 23rd day of September, 2010.

                                      s/ Michael M. Mihm

                                      Michael M. Mihm
                                      United States District Judge

---

[3] While the basis (whether in contract or in fraud) of this claim is somewhat unclear from the complaint, the Court has already determined that Plaintiff's complaint has pled facts sufficient to overcome the heightened pleading standard under 9(b) for fraud.

[4] As discussed in Section III of this motion, plaintiffs are given leave to amend this prayer for relief to include their request that the Court impose the equitable remedy of a constructive trust.